FILED                    RECEIVED

ENTERED                  SERVED ON

APR 25 2025

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY:_____AMMi_____ DEPUTY

RYNE M. SEETO                          *
    Plaintiff                       *
                                    *
v.                                     *          Case No.: 2:25-cv-00038-JAD-EJY
                                    *
Frank Kendall III                      *
Secretary of the Air Force             *
    Defendant                       *
                                    *

*************************************************************************

## AMENDED COMPLAINT

**Note: Plaintiff files this amended complaint pursuant to Fed. R. Civ. P. 15(a)(2), seeking leave of court to clarify that relief sought is equitable under the Administrative Procedure Act (5 U.S.C. § 706), ensuring jurisdiction under 5 U.S.C. § 702 and 28 U.S.C. § 1331, and to add claims regarding Defendant's breach of the Pre-Trial Agreement (PTA) and the lack of misconduct in the Article 133, UCMJ conviction specification. This amendment responds to Defendant's motion to dismiss (Doc. 11) by removing monetary relief references to avoid Tucker Act jurisdiction (28 U.S.C. § 1491) and to promote judicial economy by resolving all claims in this Court.**

*Pro se* Plaintiff complains against Defendant and alleges as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction under 5 U.S.C. § 702, which authorizes judicial review of agency actions causing legal wrong or adversely affecting the plaintiff, and 28 U.S.C. § 1331, which grants jurisdiction over cases arising under federal law.

2. Venue is proper under 28 U.S.C. § 1391(e)(1), as Defendant is a U.S. agency, Plaintiff sues a federal official in his official capacity, and Plaintiff resides in this district.

### Parties

1. Plaintiff: Ryne M. Seeto is an individual residing in Las Vegas, Nevada, adversely affected by Defendant's unlawful administrative discharge from the United States Air Force.

2. Defendant: Frank Kendall III, Secretary of the Air Force, is sued in his official capacity for actions of the United States Air Force violating the Administrative Procedure Act.

### Factual Background.

1. On October 15, 2019, Defendant initiated Plaintiff's discharge under AFI 36-3206, Paragraphs 3.2 and 3.6.4, citing "serious misconduct" from an Article 133, UCMJ conviction ("without express consent") (Attachment 1). The conduct did not meet AFI's "serious misconduct" criteria (confinement ≥ 6 months, specific intent).

a.  AFI 36-3206, Paragraph 3.2 prohibits punitive use of administrative separation. Defendant violated this without justification (Attachment 1).

2.  Defendant breached a PTA by requiring Plaintiff's resignation, then rejecting it and discharging him in June 2020 (Attachment 1).

3.  Plaintiff exhausted remedies.

a.  Notified Defendant of illegality (Attachment 1).

b.  Sought an injunction in Maryland, dismissed for AFDRB exhaustion.

c.  AFDRB upheld the discharge on August 20, 2024 (Attachment 2: AFDRB Decision).

4.  Defendant's actions caused irreparable harm, with no administrative remedy.

**Legal Claims**

**Count 1: Violation of the Administrative Procedure Act (5 U.S.C. § 706)**

1.  Agency actions must comply with their own rules, and violations causing prejudice are unlawful (Perez v. United States, 850 F. Supp. 1354, N.D. Ill. 1994). Under 5 U.S.C. § 706(2)(A), actions that are arbitrary, capricious, or not in accordance with law must be set aside.

a.  Defendant's discharge of Plaintiff was arbitrary and capricious, lacking any explanation or rational connection to evidence, as required by Central States Enterprises, Inc. v. Interstate Commerce Com., 780 F.2d 664, 674 (7th Cir. 1985).

b.  Defendant violated AFI 36-3206, Paragraph 3.2, by using administrative separation as a punitive substitute for UCMJ action, without justification (Attachment 1).

c.  The discharge failed to meet AFI 36-3206's "serious misconduct" definition, requiring confinement for six months or more and specific intent. The Article 133, UCMJ specification ("without express consent") carried no punishment under the PTA and lacked specific intent, as "express consent" implies a reasonable belief in implied consent (United States v. Gifford, 75 M.J. 140, C.A.A.F. 2016).

d.  Defendant must explain: (1) how the discharge was not punitive, (2) why it proceeded during the appeal process, and (3) how the conduct met "serious misconduct" standards (Attachment 1).

**Count 2: Breach of Pre-Trial Agreement**

1.  Defendant's rejection of Plaintiff's PTA-required resignation was arbitrary, violating the APA (5 U.S.C. § 706(2)(A).

**Count 3: Denial of Due Process**

1. Agency Agency failure to follow regulations constitutes a denial of due process (Miller v. Henman, 804 F.2d 421, 424, 7th Cir. 1986; Epstein v. Commanding Officer, 327 F. Supp. 1122, 1126, E.D. Pa. 1971).

    a. Defendant's PTA breach (rejection of resignation) violated procedural fairness, denying Plaintiff due process.

    b. The Article 133 specification failed to state an offense, depriving Plaintiff of fair notice (United States v. Brown, 55 M.J. 375, C.A.A.F. 2001). The conduct ("without express consent") lacked criminality, wrongfulness, or specific intent, as it implies a reasonable belief in implied consent, an affirmative defense under mistake of fact (United States v. Wolfson, 36 C.M.R. 722, A.B.R. 1965). This invalidates the discharge's basis.

**Analysis**

1. Administrative Procedure Act (5 U.S.C. § 706)**:** When an administrative agency promulgates rules to govern its proceedings, these rules must be scrupulously observed, even when the defined procedures are "... generous beyond the requirements that bind such agency.... Once an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, it denies itself the right to violate these rules. If an agency in its proceedings violates its rules and prejudice results, any action taken as a result of the proceedings cannot stand. Perez v. United States, 850 F. Supp. 1354 (N.D. Ill. 1994) *Alamo Express,* 613 F.2d at 98.

    a. As authorized by the Administrative Procedures Act, "agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law shall be held unlawful and set aside." 5 U.S.C. § 706(2)(A).

    b. As articulated by the Seventh Circuit in Central States Enterprises, Inc. v. Interstate Commerce Com., 780 F.2d 664, 674 (7th Cir.1985), the arbitrary and capricious standard for judicial review is necessarily narrow. Nevertheless, the agency must articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choices made. "[T]he primary requirement of the `arbitrary and capricious' standard of review is the `simple but fundamental rule of law' that an `agency must set forth clearly the grounds on which it acted.'"

    c. Agencies must base decisions on relevant data and provide satisfactory explanations. These precedents collectively underscore the judiciary's role in ensuring that military policies do not override statutory requirements and constitutional protections without just cause (*Sierra Club v. Department of the Interior*, 899 F.3d 260 4th Cir. 2018).

2. Defendant's discharge of Plaintiff was arbitrary, capricious, and abused discretion: there is no explanation, much less a rationale for Defendant's discharge of Plaintiff. Agencies must provide a rational connection between evidence and decisions, rejecting arbitrary or capricious actions. Defendant discharged Plaintiff against the standards, instructions,

directives, and laws outlined in Plaintiff's Show Cause Memorandum (attachment 1), violating the APA.

    a. At a minimum, Defendant must explain (1) how the administrative discharge is not a substitute for UCMJ punishment, (2) the reasoning behind not waiting for the appellate process to conclude before initiating action, (3) how the conduct specified by the Defendant meets the required definition of "serious misconduct," and (4) acknowledge the remaining points made by Plaintiff in attachment 1.

    b. Defendant breached the Pre-Trial Agreement (PTA) by requiring Plaintiff to submit a resignation as a condition of the agreement and then failing to accept it, proceeding instead with administrative separation (attachment 1). This breach renders the discharge arbitrary and capricious, as Defendant failed to honor its own negotiated terms without justification, further violating the APA.

3. Due Process: The failure of an agency to follow its established procedures or regulations constitutes a denial of procedural due process. *Miller v. Henman,* 804 F.2d 421, 424 (7th Cir.1986). This general rule has been applied to military and civil agencies alike. Furthermore, "[a] violation of duty set forth by the regulations themselves would constitute a violation of due process of law as the [agency] is bound to follow its regulations" *Epstein v. Commanding Officer,* 327 F. Supp. 1122, 1126 (E.D.Pa.1971).

    a. AFI 36-3206 Paragraph 3.2 states that administrative actions must not substitute for punitive actions under the UCMJ. The command substituted this administrative separation to punish Plaintiff, an overreach and misuse of administrative procedures.

    b. The basis for this action is a UCMJ Pre-Trial Agreement, which Defendant breached by requiring Plaintiff's resignation and then proceeding with separation rather than accepting it as agreed.

    c. Further demonstrating Defendant's wanton disregard for administrative procedure and the fairness of the process, Plaintiff argued that initiating administrative separation while still in the appeal process is prejudicial and violates principles of due process.

    d. AFI 36-3206 includes, as a template for action: "I am taking this action because (State the reason or reasons in precise and explicit terms. Specifically state what the officer did that forms the basis for this action.) The least favorable character of discharge that the Secretary of the Air Force may approve in this case is [honorable] [under honorable conditions (general)] [under other than honorable conditions]. Attached [is a copy] [are copies] of documentary evidence supporting this action." Defendant did not "state the reason or reasons in precise and explicit terms."

    e. The AFI also mandates that the Service Record is weighed against the misconduct. However, Plaintiff's service record was exemplary; as Chief of Exercises, Plaintiff developed the exercise Coastal Pounce, which became a

requirement; this could serve to argue that Plaintiff's stellar service record does not warrant such action. However, due to Defendant's prejudicial actions, Plaintiff's service record reads: "Not rated for the period above. Evaluation removed by order of the SecAF."

4. Defendant failed to state an offense and thus deprived Plaintiff fair notice. Article 133, UCMJ, prohibiting conduct unbecoming an officer and a gentleman, is constitutional as applied to members of the armed forces, so long as the accused has received fair warning of the criminality of his or her conduct. United States v. Brown, 55 M.J. 375 (C.A.A.F. 2001). Not every deviation in conduct constitutes unbecoming conduct; to be actionable, the conduct must be morally unbefitting and unworthy. United States v. Wolfson, 36 C.M.R. 722 (A.B.R. 1965). See United States v. Graham, 9 M.J. 556 (N.C.M.R. 1980); United States v. Maderia, 38 M.J. 494 (C.M.A. 1994).

   a. Plaintiff's Article 133, UCMJ specification has no element of criminality; it does not allege wrongfulness, it is not misconduct. Plaintiff received no warning of the criminality of his conduct as there is none as specified by Defendant.

   b. The specification "without express consent" does not constitute misconduct, as it lacks any element of wrongfulness or intent to act improperly, and Plaintiff's reasonable belief in implied consent serves as an affirmative defense under mistake of fact, further invalidating the basis for administrative separation.

   c. When discussing legal matters like those under Article 133, UCMJ, the focus is on the specification of the charge and not on any broader or speculative context. Particularly in cases involving interpersonal conduct, precision in language and nuanced specifications reflect an ethical approach that ensures that the exact nature of the misconduct is clearly defined; this precision is crucial for determining the appropriateness of administrative actions.

   d. Maintaining the focus on the specification promotes procedural fairness and ensures that an individual's rights are respected by not broadly painting an incident but instead detailing it with specificity.

   e. Legal charges and specifications are designed to be clear and specified, independent of broader contextual narratives that might exist outside the legal framework. In legal proceedings, the charge and specification are the foundation upon which the case is built, and they must stand on their merit rather than on context, assumption, or interpretation.

   f. Nuanced specifications are essential for ensuring that justice is administered with precision, fairness, and respect for the complexity of human behavior; they allow for a detailed examination of the circumstances, which is critical in both the administration of justice and the protection of individual rights.

   g. Nuanced language avoids ambiguity, eliminates assumptions, and clearly defines the exact nature as intended. "…Without express consent…" indicates

the absence of explicit verbal or written permission but also indicates the presence of other forms of consent, such as implied consent. If there was no consent, nuance and specificity mandate "no consent."

h.  Charges are formulated with precise language to describe the alleged misconduct without relying on external context for clarity. This precision ensures that the parties understand the charges and allows for a fair and structured process.

5.  Plaintiff challenges the legal foundation, fairness, and appropriateness of Defendant's decision to initiate administrative separation based on a court-martial conviction under Article 133, UCMJ sans rationale. Specifically, the application of "serious misconduct" to the conduct specified by Defendant, arguing that the specified conduct does not align with the definition of "serious misconduct" set forth by AFI 36-3206. An administrative discharge under this chapter must procedurally meet the definition of "serious misconduct:" (i) confinement for six months or more AND  (ii) specific intent. Therefore, Defendant processed Plaintiff's administrative discharge and violated the APA.

a.  Punishment: The definition of "serious misconduct" includes any misconduct that could result in confinement for six months or more. According to the Pre-Trial Agreement (PTA), the maximum punishment for the conduct specified by Defendant as the basis for the discharging Plaintiff could receive was no punishment. The instant specification is not a crime; in any court of law, the instant specification fails to state an offense and is subject to dismissal.

b.  Specific intent: "Serious misconduct" includes misconduct that requires specific intent. With respect to the requisite mental state, the existence of a mens rea is the rule, rather than the exception to, the principles of Anglo-American criminal jurisprudence. United States v. Gifford, 75 M.J. 140 (C.A.A.F. 2016). The mental state must be directly linked to the outcome of the crime. Defendant's choice of "without express consent" rather than "without consent" indicates an acknowledgment of implied consent; more definitive language—"without consent"—would be applied if Defendant truly believed there was no consent. The specification "without express consent" builds in an affirmative defense of mistake of fact, as it implies Plaintiff reasonably believed consent was present, negating specific intent and thus disqualifying the conduct as "serious misconduct" under AFI 36-3206.

   **By specifying "without express consent" rather than the more definitive "without consent," the command has, whether intentionally or not, established that elements of consent were present and that Plaintiff believed—by necessary implication—that implied consent existed, building in the affirmative defense of *mistake of fact*. Therefore, no specific intent exists, and the specification fails to state an offense.**

c.  The requisite mental state, the existence of a mens rea is the rule, rather than the exception to, the principles of Anglo-American criminal jurisprudence. United States v. Gifford, 75 M.J. 140 (C.A.A.F. 2016). The contention that an injury can

amount to a crime only when inflicted by intention is no provincial or transient notion. However, it is instead universal and persistent in mature systems of law if, at trial, the government is not required to prove that an accused knew the facts that make his or her actions criminal to secure a conviction, then the underlying crime is properly deemed a strict liability offense. While strict-liability offenses are not unknown to criminal law, the limited circumstances in which Congress has created, and appellate courts have recognized such offenses attest to their generally disfavored status. Based on the general disfavor for strict liability offenses, silence in a criminal statute or a general order does not prevent mens rea from being inferred. At the same time, courts should ordinarily resist reading words or elements into a statute that do not appear on its face. The mere omission from a criminal enactment of any mention of criminal intent should not be read as dispensing with it; instead, an indication of congressional intent is required to dispense with mens rea. Id" Again, the *cause of action* is neither criminal nor punishable.

**Relief Sought**

The Plaintiff requests that this Honorable Court:

1. Declare Defendant's action (administrative discharge) to be unlawful under the APA and vacate the action.

2. Grant equitable relief, including but not limited to:

    a. Reinstatement to Plaintiff's former rank (O-3 Captain) or equivalent status

    b. Correction of Plaintiff's military records to reflect an honorable discharge and removal of prejudicial notations.

    c. Remand to the Air Force for proceedings consistent with AFI 36-3206 and applicable law.

3. Award such other equitable relief as the Court deems just and proper, to resolve all claims in this action and promote judicial economy by avoiding multi-forum litigation.

DATED: 25 April 2025

Respectfully submitted,

RYNE M. SEETO
6300 Morning Glen Cir
Las Vegas, NV 89108
Ryne.seeto@gmail.com
702-328-8341

I solemnly affirm, under the penalties of perjury, that the foregoing is true to the best of my knowledge, information, and belief.

RYNE M. SEETO

## CERTIFICATE OF SERVICE

I certify that on the 25th day of April 2025, I served a copy of the foregoing by electronic delivery to the Clerk of Court: United States District Court for the District of Nevada and by electronic delivery to the attorney for the Defendant.

RYNE M. SEETO

6 November 2019

MEMORANDUM FOR  9 AF/CC

FROM: CAPTAIN RYNE M. SEETO

SUBJECT: Response to the Show Cause Notification

1. Sir, on 15 October 2019 I received notification that you were initiating action against me under AFI 36-3206, Chapter 3, Paragraph 3.6.4: *Serious or recurring misconduct punishable by military or civilian authorities*. The underlying conduct is a court-martial conviction under Article 133, UCMJ: *Conduct Unbecoming an Officer*.

2. On 22 October 2019 I requested an extension to respond to the Show Cause Notification. On 23 October 2019 my Area Defense Counsel, Capt Elizabeth Schiavone, amended the extension request to 6 November 2019 which your Staff Judge Advocate, Colonel Michael Blackburn, granted.

3. I agreed to resign from all appointments and unconditionally waive my right to an administrative discharge board if action under this AFI was initiated. This is my intent and what I am doing.  However, action under Paragraph 3.6.4 is improper. Additionally, the Pre-Trial Agreement does not mandate this action. AFI 36-3206, Paragraph 3.2, explicitly states: "[t]he procedures in this AFI are administrative. Commanders must not use them as a substitute for punitive or disciplinary action under the Uniform Code of Military Justice (UCMJ)." Administrative separation under this AFI must be wholly justifiable on its own merit.

4. Furthermore, it is in the interest of justice and efficiency to see the disciplinary action in this case to conclusion before initiating administrative separation. Paragraph 3.2.1 states: "Disciplinary action should normally be completed prior to initiation of administrative separation action but pending disciplinary action does not preclude initiation of administrative discharge action." As of this date, completion of the disciplinary action is dependent on the following outstanding events: Entry of Judgement, Certification of Record of Trial, and Appellate Review. The outcome of the appellate review may directly and significantly impact this action.

5. The underlying misconduct does not meet the definition/standard for "serious misconduct" under AFI 36-3206, Chapter 3, Paragraph 3.6.4. Therefore, this action is improper. AFI 36-3206 defines "serious misconduct" as:

> "**Serious Misconduct**—Any misconduct punishable by military or civilian authorities. This includes any misconduct that, if punished under the Uniform Code of Military Justice (UCMJ) could result in confinement for 6 months or more, and any misconduct requiring specific intent for conviction under the UCMJ" (AFI 36-3206 Attachment 1 at 47).

   a.  The "…or recurring…" clause of Paragraph 3.6.4 implies not all "misconduct punishable by military or civilian authorities" is "serious misconduct."

b.   The misconduct in this case was the manufactured product of a Pre-Trial Agreement that guaranteed no punishment. The maximum confinement this offense could have resulted in was none. It does not meet the definition of "serious misconduct."

c.   The misconduct did not require specific intent. It does not meet the definition for "serious misconduct."

6. Even if the misconduct met the definition for "serious misconduct," this catch-all specification of conduct unbecoming an officer cannot rise to the level of "serious misconduct" as (1) the *actus rea* is unclear and the *mens rea* nonexistent, (2) there is no analogous offense, (3) the specification does not explicitly or by necessary implication allege wrongfulness or unlawfulness. These factors greatly, if not completely mitigate the seriousness and gravamen of the subject misconduct.

7. With liberty and property at stake, a low, vague, and arbitrary standard violates the American spirit of what is right and just. The conduct in question is not specified and does not meet the standards/definition for misconduct warranting discharge under this chapter. Additionally, a cursory examination of the historical applications of AFI 36-3206, Paragraph 3.6.4 clearly establishes that the current case is not within the intended scope of Paragraph 3.6.4.

8. Retention would be appropriate even if the underlying misconduct did meet the standards/definition for "serious misconduct." I was not convicted of sexual assault, but AFI 36-3206 Paragraph 3.3.3.3 makes provisions for retention even in the case of sexual assault. I believe these criteria are instructive and should be considered when assessing whether continued processing of this discharge is appropriate.

3.3.3.3.1.1: "The conduct surrounding and including the [serious misconduct] is a departure from the member's usual and customary behavior."

a. It was a departure. Criteria met.

3.3.3.3.1.2: "The conduct surrounding and including the [serious misconduct] under all circumstances is not likely to recur."

b. It has been five years. There has been no recurrence and is unlikely to recur. Criteria met.

3.3.3.3.1.3: "The [serious misconduct] did not involve the penetration, however slight, of the vulva or anus or mouth of another by any part of the body or by any object, with an intent to abuse, humiliate, harass, or degrade any person or to arouse or gratify the sexual desire of any person."

c. It did not. Criteria met.

3.3.3.3.1.4.: "The [serious misconduct] was not committed by (1) using force causing or likely to cause death or grievous bodily harm to any person; (2) threatening or placing the other person in fear that any person will be subjected to death, grievous bodily harm, or kidnapping; (3) first rendering the other person unconscious; or (4) administering to the

2

other person by force or threat of force, or without the knowledge or consent of the person, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of the other person to appraise or control conduct."

> d. It did not. Criteria met.

3.3.3.3.1.5: "The [serious misconduct] was not the result of an abuse of rank, grade, authority or position."

> e. It was not. Criteria met.

3.3.3.3.1.6: "Under the particular circumstances of the case, the officer's continued presence in the Air Force is consistent with the interest of the Air Force in maintaining proper discipline, good order, leadership and morale. Officers have special responsibilities by virtue of their status; fulfill an integral role in maintaining discipline; and, therefore, must exhibit high standards of personal integrity, loyalty, dedication, devotion to duty and leadership."

> f. Under the particular circumstances of the case, my continued presence in the Air Force is consistent with the interest of the Air Force maintaining proper discipline, good order, leadership and morale. Despite the five years of prejudice, abuse of authority, and negligence that I endured, I have continued to demonstrate integrity, loyalty, dedication, devotion to duty and leadership. Taking further improper action against me, making a decision to prolong this case, demonstrating selective accountability and hypocritical standards, would only further undermine proper discipline, good order, leadership and morale. Criteria met.

9. The following is an abbreviated list of transgressions that have had to be rectified over the last five years. I implore you, sir, please do not add to it.

> a. This case began in December 2014 as a single misdemeanor charge in the local civilian jurisdiction. The Air Force turned this single event into five charges, two of which were military-specific. As of today, all five of the original charges have been disposed; none of the original five charges resulted in conviction.

> b. I received a referral Officer Performance Report (OPR) in 2015. This OPR precluded my right to due process and specifically the presumption of innocence. Corrective actions have been pending at the Board of Corrections Military Records since 2017.

> c. The Air Force failed to meet its legal obligations when it was unable to produce a complete Record of Trial and knowingly proceeded. The Air Force Court of Criminal Appeals had to reverse the original court-martial.

> d. The Air Force, with blatant and disdainful disregard for the Constitution, denied me Due Process, as I served 235-days of unlawful confinement. I will never get this time back.

3

    e. The Air Force ignored and manipulated Federal Statute and abused the public's trust by usurping the authority of the Secretary of Defense and the State of Georgia. Instead of sending me home after serving an unlawful sentence of confinement the Air Force, by force, required me to unlawfully register as a sex offender in a locale I did not reside. My name and reputation will forever be smeared and I will never receive recompense for the two weeks I spent in a county jail or the seven months in an ankle monitor.

10. The Air Force's unlawful, unjust, and improper actions have dragged this case on for five years. Please do not make another decision that prolongs this case. Please do not do as the commanders before you and look the other way—it only compounds the burdens for all parties. Please make your decision freely and according to our overarching policies and values.

11. Please do not think I am trying to avoid responsibility. I have sought to accept responsibility at every step of the way for the last five years. I offered to resign in 2015 in lieu of court-martial (this resignation was not accepted). I pleaded guilty to what I knew happened, without the protection of a pre-trial agreement, at the original court-martial in 2016 (this pleading was not accepted). I did not choose to come back to Robins AFB, GA—where I am clearly persona non grata—in February 2019 for the sole purpose of being court-martialed once more.

12. If you decide, however, that you will proceed with the action against me as written, I have provided my resignation. Let this be memorialized, for record, to be reviewed by the Discharge Review Board and Board of Corrections Military Records at a future date.

RYNE M. SEETO, Captain, USAF

Attachments:
1. Waiver2
2. Resignation
3. Recoupment Statement



# DEPARTMENT OF THE AIR FORCE
### HEADQUARTERS NINTH AIR FORCE (ACC)
### SHAW AIR FORCE BASE SOUTH CAROLINA

**OCT 1 4 2019**

MEMORANDUM FOR CAPTAIN RYNE M. SEETO, XXX-XX-7392, 461 OSS

FROM: 9 AF/CC
         524 Shaw Drive, Ste 200
         Shaw AFB SC 29152-5029

SUBJECT: Notification of Show Cause Action Initiated Under AFI 36-3206, Chapter 3,
         Paragraph 3.6.4

1. I am initiating action against you under AFI 36-3206, Chapter 3, Paragraph 3.6.4, *Serious or Recurring Misconduct Punishable by Military or Civilian Authorities*, that requires you to show cause for retention on active duty.

2. I am taking this action because on or about 28 December 2014, you, did grab and hold Breonna Valdes' body with your hands and legs without her express consent, which acts, under the circumstances, constituted conduct unbecoming an officer and a gentleman, in violation of Article 133, Uniform Code of Military Justice (UCMJ).

3. The least favorable character of discharge that the Secretary of the Air Force may approve in this case is under other than honorable conditions (UOTHC). Attached are copies of documentary evidence supporting this action. I am recommending an UOTHC discharge characterization.

4. If your separation is approved for a characterization of other than honorable discharge, you may petition the Veterans Benefits Administration of the Department of Veterans Affairs for certain benefits under the laws administered by the Secretary of Veterans Affairs.

5. Sign and date the attached indorsement acknowledging receipt of this notification memorandum. A copy of the notification memorandum will be provided to you. If you decline to acknowledge receiving this notification memorandum, the officer presenting it to you will indicate on it, the date and time that you declined to acknowledge receiving it and it will be included as a part of your case file.

6. If you have made an unrestricted report of sexual assault within the last 12 months and believe your commander's recommendation for this involuntary separation action was made in retaliation for making that report, you have the right to request review of the circumstances of this involuntary separation action. If you request this review, I will review the circumstances of, and grounds for, the recommendation for involuntary separation to ensure it was not initiated in retaliation for making the report.

7. Familiarize yourself with AFI 36-3206, particularly the rights that you have. If you do not apply for retirement or request a resignation in lieu of further administrative action, a

board will convene as provided in Chapter 7. Contact Capt Elizabeth T. Schiavone, 200 McChord Street, Hangar 1, Suite 103, Washington, DC 20032, (202) 404-6580, to discuss the procedures involved and your rights and options. If you decline counsel, contact Capt Laura E. Heck, Military Personnel Flight Commander, at (478) 327-7337, for counseling about your rights and options.

8. If you elect to present matters to a BOI, the standard of proof used by the board to make findings is a preponderance of evidence. You may present evidence and argument to rebut the reasons set forth in this notification memorandum or any additional reason or information developed during the BOI proceedings. You also may present other pertinent evidence.

9. Within 10 calendar days after you receive this notification memorandum, you must respond by indorsement to me. If I do not receive the indorsement within the allotted time I will proceed with further action under AFI 36-3206. Include in your indorsement:

    a. Any statement you wish to submit in your own behalf and/or any additional evidence that you wish me to consider. If you are unable to submit your statements or documentary evidence within 10 calendar days after receiving this notification memorandum, you may request more time as allowed under AFI 36-3206. Submit your request for additional time to me. If you do not submit statements or evidence, your failure will constitute a waiver of your right to do so, and I will refer your case to the BOI.

    b. A statement that Capt Schiavone, Area Defense Counsel, counseled you and that you fully understand your rights and options in this action. If you declined counsel, so state and indicate that Capt Heck, Military Personnel Flight Commander, counseled you and that you fully understand your rights and options in this action.

    c. A statement that you understand the following regarding recoupment of education assistance, special pay, or bonuses received if you haven't completed the period of active duty you agreed to serve:

        (1) Recoupment of a portion of education assistance, special pay, or bonus monies received if you voluntarily separate

        (2) Recoupment of a portion of education assistance received if involuntary discharge is for misconduct.

        (3) Recoupment of a portion of special pay or bonus monies received regardless of the basis for involuntary discharge.

        (4) Recoupment of education assistance, special pay, or bonus money received if a discharge Under Other than Honorable Conditions (UOTHC) is authorized. This is the case whether or not you are actually discharged UOTHC or actually convicted under the UCMJ.

        (5) The recoupment in all cases is an amount that bears the same ratio to the total

amount or cost provided to you as the unserved portion of active duty bears to the total period of active duty that you agreed to serve.

(6) If you dispute that you are indebted for educational assistance, the BOI, or, if you do not choose or are not entitled to a BOI, an authority appointed by the MAJCOM/CC, will make findings and recommendations concerning the validity of your indebtedness. See AFI 36-3206, 4.32 and 4.33, regarding special rules for recoupment.

d. A statement notifying me whether you intend to apply for retirement or tender your resignation. If you have applied for retirement or tendered your resignation, attach a copy of the retirement application or the resignation.

e. A statement that the area defense counsel or the chief, Military Personnel Flight, explained separation pay to you and that you understand the eligibility criteria to receive separation pay.

f. Any other pertinent information.

10. In response to this notification memorandum, you may, within 10 calendar days, tender your resignation under AFI 36-3207, Chapter 2, Section B, with the understanding that, if the Secretary of the Air Force accepts your unconditional resignation, you may be separated with the worst characterization authorized for discharge under the pending action unless the Secretary of the Air Force determines that you should be separated with a more favorable characterization. A conditional tender of resignation is one in which an officer tries to restrict the different types of service characterizations available under a particular paragraph by tendering the resignation for a specific type of characterization. Conditional tenders of resignation are not accepted by the Air Force. If the Secretary of the Air Force accepts your unconditional resignation, your discharge date will be as soon as possible, but no later than 10 calendar days after the date that the MPS receives separation instructions.

11. I have not taken action required under DoDM 5200.02_AFMAN 16-1405, as you have not had access to SIOP-ESI or other special access programs.

12. Any personal information you furnish in rebuttal is covered by the Privacy Act of 1974. Copies of AFI 36-3206 and AFI 36-3207 are available at the Area Defense Counsel.
13. You may request excess leave if the Air Force doesn't require your further participation in processing your case.

CHAD P. FRANKS
Major General, USAF
Commander

5 Attachments: (see next page)

1. Report of Result of Trial, dated 26 Jun 19
2. Pretrial Agreement w/Appendix A, dated 13 Jun 19
3. Stipulation of Fact, dated 24 Jun 19
4. AFI 36-3206 (available electronically)
5. AFI 36-3207 (available electronically)

1st Ind, Capt Ryne M. Seeto

MEMORANDUM FOR 9 AF/CC

I acknowledge receiving the Notification of Show Cause Action Initiated Under AFI 36-3206, Chapter 3, Paragraph 3.6.4 issued by 9 AF/CC, dated _14 OCT 19_ with 3 attachments at _1500_ on _15 Oct 19_.

RYNE M. SEETO, Capt, USAF

| AIR FORCE DISCHARGE REVIEW BOARD DECISIONAL DOCUMENT | CASE NUMBER<br>FD-2023-00320 |
| --- | --- |

**SUMMARY:** The Applicant was discharged on 8 June 2020 in accordance with Air Force Instruction (AFI), 36-3207, *Separating Commissioned Officers*, with an Under Other Than Honorable Conditions discharge for Unacceptable Conduct. The Applicant appealed for an upgrade of their discharge characterization, a change to the discharge narrative reason, and a change to the reentry code.

The Applicant appeared and testified before the Discharge Review Board (DRB), without counsel, on 20 August 2024. No witnesses were present to testify on the Applicant's behalf.

The attached examiner's brief (provided to Applicant only), extracted from available service records, contains pertinent data regarding the circumstances and character of the Applicant's military service.

**DISCUSSION**: The DRB, under its responsibility to examine the propriety and equity of an Applicant's discharge, is authorized to change the characterization of service and the narrative reason for discharge if such changes are warranted. If applicable, the Board can also change the Applicant's reentry code. In reviewing discharges, the Board presumes regularity in the conduct of governmental affairs unless there is substantial credible evidence to rebut the presumption, to include evidence submitted by the Applicant. The Board completed a thorough review of the circumstances that led to the discharge and the discharge process to determine if the discharge met the pertinent standards of equity and propriety.

The documentary evidence the Board considered as part of the review includes, but is not limited to the DD Form 293, *Application for the Review of Discharge from the Armed Forces of the United States,* and any additional documentation submitted by Applicant and/or counsel; the Applicant's personnel file from the Automated Records Management System (ARMS); and the DRB Brief detailing the Applicant's service information and a summary of the case.

The Applicant contends the command did not follow Air Force Instruction; the discharge basis contained errors in fact, law and procedure. In addition, the underlying conduct is not congruent with other service members discharged under the same AFI. Specifically, the Applicant contends that the conduct specified as the basis for their discharge and character of service determination cannot meet the requisite standard for "serious misconduct." and does not satisfy the "could result in confinement for six months or more" clause of the serious misconduct definition. Lastly, the discharge is not based on other factors such as quality of service.

The Board determined that the Applicant did not provide a preponderance of evidence to support their claim of inequity or impropriety in their discharge. In this case, the Applicant pled guilty to misconduct and was charged under Article 133, UCMJ. The maximum amount of confinement for a violation of Article 133 is one year or "as prescribed" when the offense is similar to another specified Article of the UCMJ. In this case, the offense to which the Applicant pled guilty is most similar to assault consummated by a battery under Article 128, which has a maximum confinement of six months. As a result, the Board found that the Applicant's actions constituted serious misconduct and formed a proper basis for their discharge.
The Applicant received a UOTHC service characterization defined in AFI 36-3206, *Administrative Discharge Procedures for Officers,* as "when separation is based upon one or more acts or omissions that constitute a significant departure from the conduct expected of service members." Therefore, the Board found the UOTHC characterization to be appropriate and congruent with other service members. Additionally, the Board found no evidence of impropriety in the discharge as the Applicant waived their right to a Board of Inquiry and acknowledged they could be separated with an UOTHC service characterization. Lastly, the Board determined that the command took into account the Applicant's quality of service; however, the Applicant's misconduct outweighed their quality of service.

The Board considered the factors laid out in the attachment to the Under Secretary of Defense memorandum, *Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Regarding Equity, Injustice, or Clemency Determinations*, dated 25 June 2018, known as the "Wilkie Memo." The Board considered the factors listed in paragraphs (6)(a)-(6)(l) and (7)(a)-(7)(r) of this memorandum and found no evidence of inequity or impropriety.

**FINDING**: The DRB voted unanimously to ***deny*** the Applicant's request to upgrade their discharge characterization, to change the discharge narrative reason, and to change the reentry code.

Should the Applicant wish to appeal this decision, the Applicant must seek relief before the Air Force Board for Correction of Military Records (AFBCMR) in accordance with DAFI 36-2603, *Air Force Board for Correction of Military Records*.

**CONCLUSION:** After a thorough review of the available evidence, to include the Applicant's issues, summary of service, service/medical record entries, and discharge process, the Board found the discharge was proper and equitable. Therefore, the awarded characterization of service shall remain "Under Other Than Honorable Conditions," the narrative reason for separation shall remain "Unacceptable Conduct," and the reentry code shall remain "N/A." The DRB results were approved by the Presiding Officer on 23 September 2024. If desired, the Applicant can request a list of the Board members and their votes by writing to:

Air Force Review Boards Agency
Attn: Discharge Review Board
3351 Celmers Lane
Joint Base Andrews, NAF Washington, MD 20762-6602

Instructions on how to appeal an AFDRB decision can be found at https://afrbaportal.azurewebsites.us.
Attachment:
Examiner's Brief (Applicant Only)

**0:00:10.1 Speaker 1:** Ready, sir?

**0:00:10.6 Ryne Seeto:** Absolutely.

**0:00:11.9 Speaker 1:** Walk in and there's a podium in the middle. We'll have you stand.

**0:00:14.5 Ryne Seeto:** Awesome.

**0:00:17.2 Speaker 1:** Just a podium right there.

**0:00:23.0 Ryne Seeto:** Good to see you all. Good morning.

**0:00:27.9 Carol:** Ladies and gentlemen, welcome to the Air Force Discharge Review Board. We request that all cellular phones and other electronic devices be turned off at this time. And the board will begin shortly. So, did you by chance leave your electronic devices outside?

**0:00:40.1 Ryne Seeto:** Yes, ma'am. I did. Yeah.

**0:00:40.7 Carol:** Very good. Thank you. Good morning Mr. Seeto and welcome to the Air Force Review Board Agency Discharge Review Board. The Air Force Discharge Review Board is a statutory board that examines an applicant's administrative discharge and may change the characterization of service and or the reason for discharge based on the standards of equity and propriety. Before we begin, I will provide a brief overview of how the proceedings will go today. This is an administrative board and will not be contentious in nature. If at any point in time the board does become contentious in nature, any of the board members do have the option to take a pause to regroup the board. The board makes a presumption of regularity in the Air Force Affairs. The burden of proof for your discharge that it was improper or inequitable does rest with you. Once the board begins, for the record, you will confirm that you are not appearing with counsel. Is that correct? No counsel today? And you will be asked if you would like to do a sworn or unsworn statement. Will you be taking a sworn or unsworn statement?

**0:01:53.2 Ryne Seeto:** I don't think I'll be making a statement. Just... Well... Okay, unsworn statement?

**0:01:57.1 Carol:** You want unsworn statement?

**0:01:58.8 Ryne Seeto:** Sure. Well, I went to... Well, I'm not sure what the difference is for a hearing like this. I went to law school.

**0:02:04.5 Carol:** Understood. A sworn statement would be where you would take an oath with your statement.

**0:02:12.4 Ryne Seeto:** I was just going to ask you guys if you have any questions as to why my request shouldn't be granted pending the show cause memorandum dated 6th November, 2019.

**0:02:22.2 Carol:** Do you have any comments on sworn or unsworn statement. I mean, if it's a sworn statement...

**0:02:29.0 Ryne Seeto:** Yeah, what am I going to do? Take it to the federal court in a lawsuit? I don't know.

**0:02:32.2 Carol:** It doesn't matter which way you want it.

**0:02:34.7 Ryne Seeto:** Right.

**0:02:34.8 Carol:** If it's sworn, it's you're just further stating that you're telling the truth. If it's unsworn, then...

**0:02:39.6 Ryne Seeto:** I thought there was a presumption that I was telling the truth.

**0:02:43.8 Carol:** So we will assume that you are taking an unsworn statement. Is that a correct answer?

**0:02:47.1 Ryne Seeto:** Okay, I would appreciate it if we just assumed that I'm telling the truth.

**0:02:51.2 Carol:** Okay, an unsworn statement will be provided today. You will be given 30 minutes to provide an opening statement and your testimony. The board members will then be given an opportunity to ask clarifying questions. You will be given an opportunity to provide closing statements and those will last no more than 10 minutes. Once the closing comments are complete, we will confirm that you are able to depart the boardroom and you will be escorted to the main gate visitor center. Following the board, the board members will deliberate and reach a decision. For planning purposes, you can expect to be notified of the results of the board by mail and email by 1 October, 2024. Do you have any questions before we begin?

**0:03:27.4 Ryne Seeto:** No, ma'am.

**0:03:28.3 Carol:** Okay, very good. Board members, you can take your seats. The Air Force Discharge Review Board is meeting on 20 August, 2024 to hear the case of former captain Ryne Seeto, who is present and not represented by counsel. Mr. Seeto will be making an unsworn statement today for his appearance. Were you made aware of the opportunity to be represented by counsel today?

**0:03:53.3 Ryne Seeto:** Yes, ma'am.

**0:03:56.0 Carol:** Okay. Thank you. And it is your desire to appear before the board without counsel today?

**0:04:01.1 Ryne Seeto:** Yes, ma'am.

**0:04:01.8 Carol:** Thank you. The applicant was discharged with an under... Other than honorable condition, discharged under the provision of Air Force Instruction 36-3207, separating commissioned officers and Air Force Instruction 36-3206, administering discharge procedures for commissioned officers. The following members have been designated to hear the case before the board today. [0:04:23.1] ____ officer, Mr. Smith, Colonel Brantley, Colonel Tsuchikou, Major Ramos, and Chief Graefels as the action officer. The board has reviewed the DD Form 293, the Application for Review of Discharge from the Armed Services of the United States, dated 3

December 2023, the examiner's brief, and all applicable supported documents. The review has ensured the board is informed of the applicant's contentions. As discussed prior to your hearing, you have two options, and you have indicated that you will be making an unsworn statement today.

**0:05:01.0 Ryne Seeto:** So I've heard.

**0:05:04.6 Carol:** Please raise... Oops, we're going to skip that part. At this point, I'd like to turn the floor over to you, and you have 30 minutes.

**0:05:13.0 Ryne Seeto:** Awesome.

**0:05:14.3 Carol:** For your opening statements.

**0:05:16.4 Ryne Seeto:** Good morning, ma'am, good morning, the members of the board. The show cause rebuttal memorandum... Sorry, the show cause memorandum dated 6th November 2019 is the quintessential rebuttal and explanation as to why, pending any questions, I'm going to assume that my request will be granted. That show cause rebuttal memorandum... That show cause memorandum has never been acknowledged, it has never been addressed, it has never been answered. It outlines the entire argument for why we're here today. The United States Air Force could have chosen any language they wanted when they decided to discharge me under the chapter that they chose. The language that they chose does not meet the definition of serious misconduct as defined by the AFI. It's that simple. And if you can even go all the way down to paragraph 12, I asked that memorandum to be preserved for review at a later date before this very board. This argument has been in existence for five years, and nobody has answered it. Why we're here today, at no small feat, by the way, as we all just noticed 30 minutes ago, to make sure that that memorandum is answered, is responded to. Thank you.

**0:06:45.7 Carol:** Okay, thank you. Board members, Major Ramos, do you have any questions for our applicant here?

**0:06:54.9 Major Ramos:** Yes, I know that in your contentions, and in what you said in front of the board in your basis, you said that the discharge is inconsistent with the standards of discipline. Where do you see the inconsistencies in the standards of discipline?

**0:07:10.0 Ryne Seeto:** If you review, I uploaded it, it's about an OpJAGAF from, I believe, 2008, where this very AFI was applied. If you review that case and compare it to mine, that standard of discipline and my standard of discipline are not even on the same spectrum. When we talk about standards of discipline, we're also talking about definitions. The standard for what was applied is not the same standard as what is written in the AFI.

**0:07:35.9 Major Ramos:** So you were saying that a certain standard was applied. So what are you saying? What standard was applied to you incorrectly?

**0:07:44.5 Ryne Seeto:** The AFI that was used to discharge me. Furthermore, the conduct that the United States Air Force chose has a built-in affirmative defense to it. It's not even misconduct. If you take the time to read the specification, you'll notice that the existence of the word explicit consent means that there was implied consent. Therefore, there is no mens rea or scienter. And it's [0:08:12.5] _____ mistake of fact. If there was no consent at all, it would have just said without

consent. So it's not even a crime. It's not even a wrongdoing. Furthermore, the misconduct that was chosen by the Air Force, they could have chosen, I waive my right to a board. They could have said that I did absolutely anything they wanted. They could have wrote it in there and it would have gone uncontested. The conduct that they chose and the words that they chose does not apply to the AFI that they chose. Hold yourselves accountable to your standard. If you're not going to do what you say you're going to do, at least don't write down that you're going to do it.

**0:08:48.5 Major Ramos:** So you were saying that conduct that occurred did not occur in the manner.

**0:08:52.9 Ryne Seeto:** I'm saying that the conduct that they wrote down, whether it occurred or not, doesn't matter. The conduct that they wrote down does not rise to the standard that was required to be discharged under this chapter.

**0:09:05.6 Major Ramos:** And then I guess I had a couple other questions. When we look at discharge and characterizations, we look at the whole record and everything like that and [0:09:13.8] ... What kind of awards and decorations did you receive during your military career?

**0:09:17.4 Ryne Seeto:** It's not... I would assume that it was in my record, but I don't know, it's just an air medal, aerial achievement medal. I don't know. It's been a while. It's been five... I've been out for five years. Lots of stuff has happened.

**0:09:28.7 Major Ramos:** I get that. I know sometimes we get letters of appreciation or some kinds of recognitions that maybe don't make it in our records. So I didn't know if there was anything maybe extra that you wanted to show.

**0:09:35.8 Ryne Seeto:** I'm more concerned about the fact that the things that mattered didn't make it in my records, such as my rebuttal memorandum, such as my rebuttal to the OPRs that the BCMR has already had to have thrown out. Those are the things that mattered to me that didn't make it in my record, not the little ribbons.

**0:09:53.2 Major Ramos:** Great. I don't have any other questions.

**0:09:56.7 Carol:** Colonel Brantley.

**0:09:57.5 Colonel Brantley:** Yes. So Mr. Seeto, in your application to the board, you state that the underlying conduct is not congruent with other service members discharged under the same AFI. Are you aware of any other officers discharged who have been found guilty?

**0:10:11.2 Ryne Seeto:** Yes, ma'am. I referenced this earlier. It was an OpJAGAF from '08. I submitted it to the board via the little portal thing. So if you guys don't have a copy of it, well, then see my previous argument about why are these things that matter not being made part of my record.

**0:10:28.4 Colonel Brantley:** Okay. Mr. Seeto, I'm going to ask you about your post-service life. Tell me about your life post-discharge. What is your career?

**0:10:39.4 Ryne Seeto:** I am a professional options, futures, and commodities trader. I am a partner

at a hedge fund. I attended law school. I live happily in Las Vegas with my girlfriend, who is pregnant. I co-parent with my lieutenant colonel, double board certified ex-wife, and our two sons at Nellis Air Force Base.

**0:10:55.5 Colonel Brantley:** What law school did you attend?

**0:10:57.8 Ryne Seeto:** Creighton University.

**0:11:00.3 Colonel Brantley:** Okay, and you graduated from it?

**0:11:00.6 Ryne Seeto:** No. I started making more money trading, so I quit early to go make more, work less.

**0:11:05.8 Colonel Brantley:** Okay, what hedge fund company are you working at?

**0:11:09.5 Ryne Seeto:** PDG Capital. But it's just it's... I do... I work privately for myself now.

**0:11:15.5 Colonel Brantley:** Okay, have you participated in any counseling, rehabilitative efforts since you've been discharged?

**0:11:26.2 Ryne Seeto:** Are you talking about like mental health or like...

**0:11:31.1 Colonel Brantley:** Right.

**0:11:31.8 Ryne Seeto:** Oh, absolutely. Oh, absolutely. I've seen... Most definitely. If you... The monster that you see before you today was created by this room. I've had tremendous amounts of therapy to try to get that under control. Absolutely. There's a reason that I knew how to get to this room and my escort didn't.

**0:11:53.6 Colonel Brantley:** Okay. Have you had any arrests or criminal charges against you post-discharge?

**0:12:02.9 Ryne Seeto:** No. However, I'm more curious as to why... How that is a factor to... Why would that even be a factor? Out of curiosity.

**0:12:12.1 Colonel Brantley:** Yes, I can answer that. So under the Wilkie...

**0:12:12.9 Ryne Seeto:** I regret asking.

**0:12:14.1 Colonel Brantley:** Under the Wilkie guidance in determining whether to grant relief on the basis of equity, injustice, or clemency, DRBs can consider multiple factors, including rehabilitative efforts, so on and so forth, that I've been asking you about.

**0:12:28.3 Ryne Seeto:** Understood. Thank you.

**0:12:30.4 Colonel Brantley:** Okay. Does your victim support request for relief?

**0:12:36.4 Ryne Seeto:** So, based on the... After all of the litigation has settled, there is no victim.

Otherwise, the only remaining conviction is under Article 134, UCMJ, conduct on becoming an officer, where there is a complaining witness, but there is no victim as... The victim of Article and Article 134 is the service. There is no victim.

**0:13:05.7 Colonel Brantley:** And, let me see. How would an upgrade and discharge help you?

**0:13:16.0 Ryne Seeto:** Well, I did not get my GI Bill, so I would get that back. I would also now have the Air Force... How would it help me? It's the truth. It's what is. It's as simple as just what is, and what is helps. It's a shadow that is no longer cast over me unjustly. It's just restoring a right, correcting a wrong.

**0:13:44.5 Colonel Brantley:** Okay.

**0:13:44.7 Ryne Seeto:** It's one less thing that I now have to spend time, energy, and effort to explain. And more importantly, it might actually... Maybe it will restore a sense of pride for the service that I did have.

**0:13:58.6 Colonel Brantley:** Okay. Okay. That's all the questions I have. I concede to the board.

**0:14:02.1 Carol:** Mr. Smith?

**0:14:03.8 Mr. Smith:** Thank you, Carol.

**0:14:04.5 Carol:** Yes, sir.

**0:14:04.6 Mr. Smith:** Sorry, I just have one question. Understanding your point about the documentation that's there, as the board, and I know myself, I would like to still hear from you. I've read the documents and you mentioned the comparative case. Well, I just want to hear from you what your contention... You know, how you lay out the contention. You're in the spot. I've obviously read it, but this is your opportunity to talk about it. So you pointed out that, hey, there's a comparative case that the results are identical to mine...

**0:14:37.6 Ryne Seeto:** Well, the results are identical but that dude threw a punch at his father-in-law, assaulted his ex-wife, was arrested, put on probation, and then the Air Force discharged him under the same thing as my... Without explicit consent, held with arms and legs. But that means there was implied consent. Because if there was no consent, you would have said without consent. And then just held with hands and legs... What are you talking about, a hug? And that conduct was on becoming an officer. I didn't even say that what I did was wrong, which is, by the way, as a lawyer, you need that necessary element of alleged wrongfulness in the specification. You could have at least said that Captain Seeto, on this day, at this place, did wrongfully. You could have at least said that. Yes, ma'am.

**0:15:24.3 Carol:** If you could please just take it down a little bit. It's not a contentious board.

**0:15:28.5 Ryne Seeto:** This is passion, ma'am.

**0:15:30.7 Carol:** Yes, I know, but take it down.

**0:15:34.0 Mr. Smith:** That's all the questions I have. Thank you, sir.

**0:15:35.7 Ryne Seeto:** Yes, sir.

**0:15:37.6 Carol:** I do want to just elaborate a little bit on what Mr. Smith was asking, and then I'll come back to you Colonel Tsuchikou. With having a personal appearance board, even though you have provided documents and you have provided that, it is very helpful for your case to provide background and to provide a justification of why you provided those documents. All the board members can read those cases as well, and we do read those. We spend a lot of time reviewing the case. But this is your opportunity because it's not just the records review, so I would give you that opportunity to do that...

**0:16:14.7 Ryne Seeto:** Sure.

**0:16:15.2 Carol:** Both now and then also in your closing argument.

**0:16:16.8 Ryne Seeto:** Sure.

**0:16:17.1 Carol:** Okay.

**0:16:17.9 Ryne Seeto:** In order for this discharge to have been initiated and come to fruition and completion, resulting in my inevitable discharge under other than honorable characteristics, the 9th Air Force commander had to initiate action against me, as he did so. He chose the words that he chose as the justification, and he chose the AFI that he chose that we've been discussing, the one that resulted in the reason that we are here today. He chose to do that. He asked me to tell him why he shouldn't do it and why that wouldn't work. I replied, the entire argument is laid out. I just... I can't. I didn't bring it in front of me because it speaks for itself. The records review had it as well. That's when the AFDRB met, however many years ago that was, and it was not a personal appearance, they had that in front of them as well. They didn't address it.

**0:17:16.4 Ryne Seeto:** They acknowledged what I was alleging, and their reasoning for denying my upgrade then in a records review was that the applicant has had ample opportunity to change his negative behavior. What negative behavior? And you didn't say that the commander was right or wrong. You didn't say that I was right or wrong in anything that I was alleging. You said that I had ample opportunity to change my negative behavior. The only... You know what? I can see how that's confusing when the negative behavior that I've been accused of has changed since 2014. Every single year it was something different. It was something different, but it was all the same incident. So just... It's all right there. You can't do what you did, and you did it anyways, and I told you that you were going to do... You have to really take a second to read paragraph 10 of that memorandum where I am literally begging the United Air Force commander, whose name I did not even know, I'm begging him to just do what's right and make his decision freely in the spirit of an American airman instead of compounding the pain and suffering that all the other commanders did before him.

**0:18:23.0 Ryne Seeto:** I even foisted a list of transgressions that even up to that point have had to been rectified to persuade him that please do not kick this can down the road like we always do. And then on paragraph 12, and if you're going to do it anyways, even as written, because all you had to do was write it a different way, then please preserve this memorandum for the record for

review by the Air Force Discharge Review Board and Board of Corrections and Military Records at a later date. Dated 2019. Captain Ryan M. Seeto, United States Air Force. That is the argument, ma'am.

**0:19:09.2 Carol:** Mr. Smith, do you have any other questions?

**0:19:11.7 Mr. Smith:** No, ma'am. [0:19:12.2] ▮▮▮▮ .

**0:19:12.2 Carol:** Colonel Tsuchikou?

**0:19:14.7 Colonel Tsuchikou:** Well, thank you for being here. I know we had a hard time getting you here. And I think our president did an extra ordinary job to allow you to get in here, so we should be grateful for that. We've read a lot about your case and what's going on. And as you can see, some of us are really new to this. So everything we did was reading. So your human face helps us to make this decision. So my question is, what did you plead guilty to?

**0:19:46.0 Ryne Seeto:** That is such a wonderful question, ma'am. I'm still trying to figure out what it was that I'm guilty of. So, I would like to walk you through this in real time. So, there I was... At my first court-martial, what happens, happens, it is what it is. Imagine, man, I said goodbye to my wife after that court-martial having been convicted of Article 133 and Article 134, uniquely military-specific offenses. Article 133 being service discrediting. Article 134, conduct unbecoming an officer. Those specifications are completely different than anything. They've been rewritten a 100 times, but that's what I was originally found guilty of. And by the way, the conduct wasn't in a base, I wasn't in uniform, it had nothing to do with the military. Not the point.

**0:20:46.8 Ryne Seeto:** I said goodbye to my wife around 11 something, 12 o'clock, midnight-ish on a Saturday night because everybody else had work to do on Monday and they didn't want to convene... They wanted to push my trial, they wanted to hurry up and finish my court-martial. That's why I said goodbye to my wife. And then I went to a county jail, spent a couple weeks there waiting for the Air Force to figure out how to get me to the brig in Charleston Air Force Base, South Carolina. I was sentenced to 10 months confinement for those two uniquely military-specific offenses, which are not... Which are written completely different. They're actually written, legally speaking, they're actually written well. So here's a fun fact. Members of the military and civilians cannot be housed in the same units. So I spent those two few weeks at Houston County Jail and essentially in isolation, all alone.

**0:21:48.9 Ryne Seeto:** And then I finally did get to go to the brig. And honestly, the brig wasn't bad. You were with other members of the military, it was, honestly, it great. But at the conclusion of that first court-martial, they knew that they lost the record of trial, that it was not going to be complete and you cannot certify a sentence without the complete record of trial, which means this is a mistrial and it has to be done over again. That was known before that court-martial convened. So I spent every single day in the brig believing that when the Air Force just does its job, per the United States Constitution, Article VI, the Due Process Clause, with the United States Air Force and the military, UCJ we call it a merino... USB merino outlines the explanation. You have 120 days to certify the record of trial as complete or incomplete.

**0:22:52.5 Ryne Seeto:** They knew it was incomplete from day one. So as soon as the Air Force does its job and certifies that record of trial as incomplete, I go home. I spent every single day

wondering, if only somebody does their job, I get to go home today. That's worse than just serving your sentence and doing your time. I then get out. And instead of going home on appellate leave, back to my wife and kid, who's working with me at the time. My wife is at Defense Health Headquarters up here in DC. I had to go back to Georgia because I'm still technically a member of my unit on active duty. I have no home. I have no car. I have no wallet. I have no job. What am I doing here? All because the Air Force didn't do its job, constitutionally, a guaranteed job. The United States Constitution grants the government certain powers. And with those powers comes certain responsibilities. Those responsibilities are to produce a record, a complete record of trial. It took them 275 days, 74 days, excuse me, to produce that record of trial. And so I sat at my base. I don't even know what I was doing. I can't even remember. So I blocked it out so hard, waiting to go home on appellate leave with convictions.

**0:24:07.0 Ryne Seeto:** And once the Air Force finally did its job, once the Convening Authority finally certified it as incomplete, I don't even remember if it was certified as complete or incomplete. I think they actually certified it as complete, but the military judge certified it as incomplete. And then I had to wait another 18 months for it on appeal. Okay. I'm not going to go into details of what happened during that 18 months because it just gets worse and I don't want to relive it. This room right here.

**0:24:30.3 Carol:** Sir, would that be helpful for your case then we need to here that.

**0:24:34.9 Ryne Seeto:** No, it's just going to embarrass the Air Force more. This room right here, these guys, they threw the entire case out 18 months later as if nothing happened. Just did what should have been done from the beginning, applied the standards that should have been applied from the beginning.

**0:24:56.4 Ryne Seeto:** And then that got thrown out in like October 2018 or something like that. I don't know. I get ordered back to Robbins Air Force Base, four states away. I'm with my wife and kids starting and putting my life back together. Finally, now that I no longer have these convictions hanging over my head, I show up, I report for duty. Keep in mind that you don't get to see how awesome of an officer I was in my OPRs. You know why? Because by order of the Secretary of the Air Force, they had to be destroyed. They had to be removed because of those stupid lines in there where they said that I did something I didn't. One of my former commanders very recently sat in my couch, in my living room in Las Vegas and looked at my pregnant girlfriend and said to her, the greatest tragedy today is that Captain Seeto will not be fighting in this next war.

**0:25:45.3 Ryne Seeto:** I reported for duty after all of that, showed up, put that uniform back on, four states away from my wife and kids just to get court-martialed a second time. And then I sat there, over there, Roberts Air Force Base, while my newborn son, my other son, my wife, were in four states away, doing nothing. I was a rated officer that they put in, they tucked away in the comptroller squadron to do nothing. But you know what, that was beautiful because during that time, that's when I learned how to trade. That's when I learned how to become an options, futures, and commodities trader. Over that time I spent there, doing nothing, being... Quite literally suffering. But the Air Force said, it's okay, because we're paying you. We're paying you 100K a year to do nothing and be away from your wife and kids. Just to get court-martialed a second time. The point of this is, that second court-martial, I'm done, I'm tired.

**0:26:44.8 Ryne Seeto:** So I offered to plead guilty, for do no punishment at all, because you guys

can't punish me. You can't hurt me anymore because at some point it becomes normal. But the nice thing is, I got to craft my own specification, because the Air Force didn't want to spend any more resources on me. But by the way, why did you send me back to Robins just to get court-martialed a second time, when there's this beautiful base that we're all standing on right now, that was right down the street from my house here in Maryland at the time. The Air Force went above and beyond to do what? So I crafted that specification, which is completely different than the old specifications. Why do you think I know it so well? Well, it is not a crime. Ask me how I know, I wrote it. The Air Force agreed to it. They let me plead guilty to it.

**0:27:29.4 Ryne Seeto:** And I was hoping that this room again, it went honest on appeal, they would be you can't plead guilty to a crime. I said, you can't plead guilty to something that's not a crime. And then they would throw out even that conviction. But these guys just said, as part of my plea agreement, I waived to waive all waivable rights. So I waived that right to have that reviewed and it never got reviewed. Oh well, no harm, no foul, no big deal. But then you're going to turn around and take the specifications that I wrote that is not a crime by any legal doctrine and say that we're going to... You could have just let me resign. I offered it. He said, no, we're going to fire you instead.

[background conversation]

**0:28:12.7 Ryne Seeto:** For the record for you guys, I don't know how many of you are aware of, yeah, the tremendous trial and tribulations that went into getting me here today and why that was so important. Because it's the adversity and overcoming it that matters. If we had done this the easy way, it would not be as impactful, would it? Overcoming, being resilient and doing what needed to be done because there's nothing else to do is what made this matter. If we would have taken that easy way out at any point, we would have done the same thing that every single officer who swore an oath to that constitution did before us. And look where that has gotten us. It's the August 20th, 2025. Four, excuse me. I was thinking, anyways. Because the incident happened in December of 2014, but then things really kicked off in 2015. So I was 10 years later. So how the mind works.

**0:29:16.2 Colonel Tsuchikou:** I do have two questions.

**0:29:16.7 Ryne Seeto:** Yes, ma'am.

**0:29:18.6 Colonel Tsuchikou:** You had said that the act that happened that night had nothing to do with the military.

**0:29:25.1 Ryne Seeto:** Yes, ma'am.

**0:29:26.7 Colonel Tsuchikou:** Can you tell me what it means to you to be an airman in the United States Air Force? If the charges that you had were conduct of unbecoming of an officer, can you talk to me about why that had nothing to do with being in the military?

**0:29:45.5 Ryne Seeto:** Interesting question. I'm going to answer it in a more roundabout manner than is typically characteristic of me. The civilian detective who was assigned to that case, he remains my friend today. I've been to his home. I've eaten dinner with him and his wife. Do you know why? Because he has to live with knowing what the Air Force did to me because of his investigation. And that's how he tries to make it right. I know where you're going with the question

that you asked and hence the roundabout metaphor. At least I didn't break my oath to the constitution. At least, if you have to say you have integrity, guess what you don't have? I'm too busy trying to maintain mine to know if I have it or not. What is our core value?

**0:30:50.2 Colonel Tsuchikou:** Is that a question for me?

**0:30:52.2 Ryne Seeto:** Rhetorical, ma'am, sorry. That's what it means to be an airman. I'm going to be held to a standard of conduct that has nothing to do with the United States military, with the Air Force, but things that directly do have to do with being in uniform, you can't do right. You can't even be, you're not as good as your word. Not you, proverbial you, of course.

**0:31:14.1 Ryne Seeto:** The they, the them, the ninth Air Force commander who initiated action against me who I don't even know his name was. I don't even know what his name was. That you, all the people that had the opportunity to do the right thing and chose not to because it just wasn't convenient, because it was easier. But that's your job. What, you didn't do it? But you're going to say that I didn't do my job one night in the privacy of my own home? But somehow that had something to do with you? Does that answer your question, ma'am?

**0:31:40.6 Colonel Tsuchikou:** Thank you. My final question is for you is, do you feel that the behavior that you are seeking relieve from, was honorable?

**0:31:55.6 Ryne Seeto:** I don't know what the word honorable means anymore. I'm still trying to figure that out.

**0:32:00.9 Colonel Tsuchikou:** You are asking for an honorable discharge?

**0:32:01.7 Ryne Seeto:** Oh, I'm just asking for the discharge that I received because it was unjust, because that's not possible. What you guys did, not you, what the Air Force did was divide by zero. How did you... How is that allowed? You discharged me for this, under this, but that doesn't apply to... It doesn't apply to what you, to that. Connect the dots. And so it's not even necessarily an upgrade. It's just you can't do that, so that's your only option, so circle that one. But yeah, I do know what honorable is. Honorable is reporting for duty, even when I have no reason to. Honor is offering to resign. Honor is attempting to take accountability at every step. Remember, I offered to do a naked plea in the very, very, very first court-martial. They told me no. Honor is trying, I still showed up to work every single day leading up to that court-martial when I was taken.

**0:33:10.7 Ryne Seeto:** That's what honor is. Honor is duty. It's doing your job. Do you see why that's funny? Because at any moment, I could have been released from the brig if the Air Force had just done its job. That's what honor is. Honor is doing what you say you're going to do for no other reason than you said it.

**0:33:27.3 Colonel Tsuchikou:** If we can go back. Was your service that night the actions that you did honorable?

**0:33:33.2 Ryne Seeto:** Absolutely. Absolutely. In fact, I was better off being dishonorable and just, if I didn't... I put myself in that situation. Here's what you don't maybe... Here's what you guys said, you've read a lot about the case or whatever. I don't know what you did or didn't read. All I know is I didn't provide any specifics of the case, which I find interesting, by the way, because we're not

here to talk about that case. We're here to talk about the discharge, but what you probably don't know, I already took responsibility for putting myself as a married man in a position that I had no business being in. However, I went out on a date with somebody that I met on Tinder. That was stupid of me to do. But you know what's interesting? The only reason I did it was because I was seeing everybody else do it. That was the conduct from the members of my unit that I thought was okay, and I wanted to be like them. I've never said that to anybody. I've never told a soul that part. On this date, I feel terrible. I feel awful the whole time.

**0:34:31.8 Ryne Seeto:** And I actually leave. I get to my car, and there's her sweater and her phone. The only reason I went back in there was to give her her phone and her sweater. And she said, can I please come home with you? I didn't feel safe. Everybody kept trying to talk to me. And then at my house, she said no, and it didn't happen. And then I took her home. Yeah, I did the right thing. I had no business being there. But man, I could have been a piece of shit and left a young lady in a club with no cell phone. But that would have kept me out of trouble. If you were at the first court-martial, she didn't even know my name. But there's a recording of her. That's right. Some other man out there, became so afraid of this woman, that he started recording her phone calls with him. And my defense counsel from that court-martial, Jocelyn Stewart, I learned so much from her. It's one of the reasons I'm now the world's greatest lawyer.

**0:35:33.6 Ryne Seeto:** That moment in the court-martial, she's up there cross-examining the complaining witness. And she asks, says to her, ma'am, would you ever lie about something as serious as sexual assault? No, ma'am, never. Your Honor, the defense would like to introduce Defense Exhibit Echo audio recording, where she says to this other man, do not ruin this court-martial for me. You cannot tell them that I'm crazy. And he says to her, you know what you're asking me to do, right? And she says, yeah, I know it's going to be hard.

**0:36:11.6 Colonel Tsuchikou:** Thank you for answering that question.

**0:36:12.8 Ryne Seeto:** Yes, ma'am. Thank you for the opportunity.

**0:36:33.8 Carol:** At this time, we would like to turn to answer or to give any closing comments. And you do have 10 minutes for closing comments.

**0:36:47.3 Ryne Seeto:** With all due respect, and it's kind of funny because I have typically come to obviously mean that phrase the way we all underhandedly mean it. But no, seriously, you guys have been wonderful. And I regardless, thank you for this closure. That's all, I don't have any questions. I've been talking, I'm tired of listening to me talk because I'm sure you are. Thank you for this, at least for the closure. And I hope that once again, I don't even feel like asking, just do the right thing. You just can't divide by zero. Just you can't divide by zero, guys. And there's only one other option left. So pending any more questions, I'm going to assume that you will grant my request.

[background conversation]

**0:37:34.3 Carol:** This concludes this morning's board. Thank you for attending. I'm glad that we were able to have you escorted on base and conduct a safety and safe travel.

**0:37:45.5 Ryne Seeto:** Thank you very much, ma'am. I appreciate the opportunity.