**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Ryne M. Seeto,

      Plaintiff

v.

Frank Kendall III,

      Defendant

Case No.: 2:25-cv-00038-JAD-EJY

**Order Denying Motions**

[ECF Nos. 48, 50]

Pro se plaintiff Ryne Seeto, a former Air Force Captain, was discharged under "other-than-honorable conditions" following a conviction under the Uniform Code of Military Justice.[1] He alleges that the discharge was "arbitrary and capricious" and "an abuse of discretion" under the Administrative Procedure Act (APA) and that both his underlying conviction and the Air Force's rejection of his resignation violated his constitutional right to procedural due process.[2]

Seeto now moves for summary judgment theorizing that Dr. Gerald Curry, the official who signed the discharge "on behalf of the Secretary of the Air Force," lacked lawful authority to act, violated the Federal Vacancies Reform Act and the Appointments Clause, and later tainted the discharge-review process through structural bias. Because Seeto's complaint never mentions Curry or challenges Curry's authority to act, I deny his motion for summary judgment on those unpled theories.

Seeto also asks me to reconsider my order denying his sanctions motion. But he has not shown newly discovered evidence, clear error, manifest injustice, or an intervening change in controlling law to warrant reconsideration, so I deny that motion too.

---

[1] ECF No. 24 at 3.

[2] ECF No. 21.

**A.**     **Seeto's summary-judgment motion fails because it seeks judgment on facts that he did not plead.**

*1.*     ***Summary-judgment standards***

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the (movant) is entitled to a judgment as a matter of law."[3] "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[4] A fact is material if it could affect the outcome of the case.[5] On summary judgment, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[6] So the parties' burdens on an issue at trial are critical.

The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[7] When the plaintiff bears the burden of proof at trial "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[8] The plaintiff must establish "beyond controversy every essential

---

[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[5] *Id.* at 249.

[6] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[7] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[8] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

element of its" claim in order to avoid trial and prevail on summary judgment.[9] If it does, the burden shifts to the nonmoving party, who "must present significant probative evidence tending to support its claim or defense."[10]

> ### 2. Seeto cannot use Rule 56 to convert his APA challenge into an unpled attack on Curry's authority.

As a threshold matter, the Secretary argues that Seeto's summary-judgment motion should be denied because it attempts to inject entirely new theories into this case. Seeto responds that he is not asserting new claims at all but merely advancing additional legal bases for vacatur under the APA's framework for unlawful agency action. The APA requires agencies to engage in reasoned decision-making, and it empowers courts to "hold unlawful and set aside agency action" that is (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," (2) "contrary to constitutional right," or (3) "in excess of statutory jurisdiction, authority, or limitations."[11]

In his amended complaint, Seeto invokes the first two theories. He alleges that the Air Force acted arbitrarily and capriciously by discharging him for purported "serious misconduct" that he contends did not satisfy the governing Air Force Instruction and by rejecting his resignation under the parties' pre-trial agreement.[12] He also alleges that the discharge process violated procedural due process because the Air Force failed to follow its own regulations and relied on a legally defective Article 133 specification.[13] The complaint says nothing about Dr.

---

[9] *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

[10] *Id.*

[11] 5 U.S.C. § 706(2).

[12] *See* ECF No. 21 at 2–3.

[13] *Id.* at 3.

Gerald Curry, the Federal Vacancies Reform Act, the Appointments Clause, structural bias, or any contention that the discharge was void because the official who signed it lacked lawful authority to do so.

Yet that is now the centerpiece of Seeto's summary-judgment motion. For the first time, he argues that Curry's alleged lack of authority rendered the discharge ultra vires, violative of the FVRA and Appointments Clause, and constitutionally infirm.[14] He insists that these are merely alternative legal grounds for relief under the APA rather than new claims altogether.[15] But even when liberally construing a pro se pleading, the Ninth Circuit does not permit a plaintiff to transform a case at summary judgment by introducing a wholly new theory premised on facts never alleged in the complaint. As the Ninth Circuit panel recently explained in *Hartzell v. Marana Unified School District*, "After having focused on one theory in [his] complaint and during discovery, [a plaintiff] cannot turn around and surprise the defendant at the summary judgment stage with a completely different theory."[16] That principle applies even when the new theory arises under the same statutory framework because pleadings must still provide fair notice of the factual basis of the claim being asserted.[17]

Seeto's amended complaint challenged the substantive and procedural propriety of the Air Force's discharge decision itself. His summary-judgment motion instead challenges the legal authority of the official who signed the discharge paperwork and the composition of the

---

[14] ECF No. 48 at 1–2.

[15] ECF No. 61 at 2–3.

[16] *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 744 (9th Cir. 2025) (cleaned up); *see also Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (finding that allegations in a complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests).

[17] *See* Fed. R. Civ. P. 8, 12(b)(6).

later review process.  Those theories depend on materially different factual inquiries, different defenses, and a different administrative record than the one framed by the complaint.  Because Seeto's summary-judgment motion rests on theories and facts that his amended complaint never placed at issue, those theories cannot support judgment in his favor.  I therefore deny the motion on that threshold ground.[18]

**B.     Seeto's motion for reconsideration is denied.**

Seeto also moves for reconsideration of my order denying his sanctions motion.[19]  A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient[,]" so long as it still has jurisdiction.[20] This court's local rule 59-1 contemplates reconsideration of an interlocutory order if "(1) there is newly discovered evidence that was not available when the original motion or response was filed, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law."[21]  The rule cautions that "[m]otions for reconsideration are disfavored," and "[a] movant must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts.  A movant who repeats arguments will be subject to appropriate sanctions."[22]

---

[18] To the extent Seeto's motion gestures at the theories that were pled—his arbitrary-and-capricious challenge, his pretrial-agreement theory, and his procedural-due-process theory—he has not developed them as independent bases for judgment.  Those points are offered only in service of his new voidness theory.

[19] ECF No. 50.

[20] *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013); L.R. 59-1.

[21] L.R. 59-1(a).

[22] L.R. 59-1(b).  *See also Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). While the Ninth Circuit has not established a standard of review for motions to reconsider interlocutory orders like this one, district courts frequently apply the standard applicable to

Seeto contends that reconsideration is warranted because my later denial of the Secretary's motion to dismiss "vindicated" his sanctions theory, the Secretary waived Federal Rule of Civil Procedure 11's safe-harbor requirement by opposing sanctions on the merits, his March 2025 phone call with government counsel substantially complied with Rule 11(c)(2) regardless, and the government's later failure to oppose his summary-judgment motion constitutes new sanctionable conduct.[23]

Seeto's primary premise misunderstands both my earlier order and Rule 11 itself.  He reasons that because the Secretary's Tucker Act argument failed, it must have been frivolous from the outset.  But Rule 11 does not operate that way.  An argument is not sanctionable just because it's a losing one.  My earlier order held only that, accepting the amended complaint as pled, Seeto principally sought equitable APA relief rather than presently recoverable money damages, so dismissal under the Tucker Act was unwarranted.  That ruling resolved a contested jurisdictional question; it did not find that the Secretary acted in bad faith, advanced knowingly frivolous arguments, or lacked any colorable basis for the motion.  Courts routinely wrestle with whether requested relief is genuinely equitable or instead "money-mandating" in substance.[24] The Secretary lost that fight, but that alone does not render the motion sanctionable.

Also, Seeto still has not cured the defect that doomed his original sanctions motion: he admittedly did not comply with Rule 11(c)(2)'s safe-harbor requirement.[25]  In denying that motion, I explained that Seeto conceded he "did not serve the safe-harbor notice required by

---

FRCP 59(e) motions to reconsider final judgments. *See In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.*, 614 F. Supp. 3d 783, 788 (D. Or. 2022), *aff'd,* 2023 WL 7211394 (9th Cir. 2023) (collecting authorities).

[23] ECF No. 50 at 2.

[24] *See, e.g., Marshall Leasing, Inc. v. United States*, 893 F.2d 1096, 1099–1100 (9th Cir. 1990).

[25] ECF No. 49 at 11.

Rule 11(c)(2)" and instead asked the court to issue a show-cause order under Rule 11(c)(3). Ninth Circuit law strictly enforces that requirement. A party seeking Rule 11 sanctions must first serve the sanctions motion and then wait 21 days before filing it, giving the opposing party a chance to withdraw or correct the challenged filing.[26] When that step is skipped, the court cannot award Rule 11 sanctions—even if the challenged filing was frivolous.[27]

Seeto argues that the Secretary waived the safe-harbor defect by opposing the sanctions motion on its merits instead of objecting to service. A merits opposition filed after the sanctions motion is already pending cannot retroactively create the prefiling withdrawal opportunity that Rule 11 requires, however. He also argues that his March 2025 phone call with the government's counsel substantially complied with the rule because he told counsel that he was not seeking monetary damages. But informal notice of a litigant's position is not service of a Rule 11 motion, and the Ninth Circuit has made clear that phone calls, letters, and other informal warnings cannot substitute for serving the motion itself.[28] So the same procedural defect that required denial of the sanctions motion remains fatal on reconsideration.

---

[26] Fed. R. Civ. P. 11.

[27] *Barber v. Miller*, 146 F.3d 707, 710–711 (9th Cir. 1998) ("An award of sanctions cannot be upheld" if the movant does not comply with the twenty-one day notice requirement); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 826 (9th Cir. 2009) (affirming district court's ruling that there was "no basis" for awarding Rule 11 sanctions because moving party did not comply with safe-harbor provision); *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) (reversing district court's grant of Rule 11 sanctions because the moving party failed to comply with the safe-harbor provision); *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025–26 (7th Cir. 1999) (stating that "the twenty-one day safe harbor is not merely an empty formality," and a "court that imposes sanctions by motion without adhering to this twenty-one day safe harbor has abused its discretion"); *Holgate v. Baldwin,* 425 F.3d 671, 678 (9th Cir. 2005) (stating that "(w)e must reverse the award of sanctions when the (moving) party failed to comply with the safe harbor provisions, even when the underlying filing is frivolous").

[28] *See, e.g.*, *Barber*, 146 F.3d at 710 ("It would therefore wrench both the language and purpose of the amendment to the Rule to permit an informal warning to substitute for service of a motion.").

Seeto's alternative sanctions theories do not fare any better.  A losing motion, a later missed deadline, and Seeto's speculation about "strategic default" do not amount to vexatious multiplication of proceedings or bad-faith conduct, particularly when the missed summary-judgment deadline fell during the government shutdown and this district's stay of government filings during that time.[29]  So these arguments neither justify sanctions nor establish any recognized basis for reconsideration.

**C.    Seeto is cautioned to verify the authorities he cites before filing them.**

As a final point, I note that Seeto's briefs cite cases for quotations or propositions that the cited authorities do not appear to support.  Seeto attributes to *Withrow v. Larkin*[30] the phrase "would offer a possible temptation to the average man as a judge to forget the burden of proof," but that language does not appear in *Withrow*.[31]  Seeto also cites *Bittinger v. Tecumseh Products Co.*[32] for the proposition that voluntary engagement with a motion waives procedural objections not timely raised.[33]  But *Bittinger* is an ERISA and res judicata case discussing privity, virtual representation, and class-related issues and does not appear to support the waiver proposition for which Seeto cites it.

These errors may stem from carelessness, reliance on a secondary source without checking the original authority, or unverified reliance on an AI research or drafting tool.[34]  When

---

[29] General Order 2025-07 issued by Chief District Judge Andrew P. Gordon on October 2, 2025.

[30] *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

[31] ECF No. 48 at 2.

[32] *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 881 (6th Cir. 1997).

[33] ECF No. 50 at 4.

[34] While AI tools can be useful, and this court does not prohibit litigants from using them, those services pull information from across the web—including from unreliable sources—and they often hallucinate (or make up fake) legal authority.  Using AI to supply legal authority for briefs

an unrepresented litigant or attorney signs any filing before this court, he certifies that "the claims, defenses, and other legal contentions are warranted by existing law."[35]  Parties must verify that the authorities they mention are accurate before presenting them to a court.  Repeated violations of this sort may invite sanctions—including case dismissal.

### Conclusion

IT IS THEREFORE ORDERED that plaintiff Ryne Seeto's motion for summary judgment **[ECF No. 48]** and motion for reconsideration **[ECF No. 50] are DENIED.**

_____
U.S. District Judge Jennifer A. Dorsey
May 5, 2026

---

may violate the Federal Rules if hallucinated or inaccurate legal citations are included to support arguments.

[35] Fed. R. Civ. P. 11(b)(2).

9